ST. JAMES ORPHAN ASYLUM ET AL. V. MARY B. SHELBY.

FILED NOVEMBER 21, 1900. No. 9,243.

1. **Record: CASE PROPERLY BROUGHT.** Record examined, and the case *held* to have been properly brought to this court for consideration upon the merits involved in the controversy.

2. **Will Construed.** Provisions of the will in controversy examined, and *held* to disclose no interest in the devisee therein named, save that of trustee for the purpose of applying the property devised to charitable uses.

3. **Common Law:** FEDERAL CONSTITUTION: STATE CONSTITUTION: STATUTE. So much of the common law as is applicable, and not inconsistent with the federal constitution or the laws and constitution of this state, is by statute declared to be a part of the law here. Compiled Statutes, 1899, ch. 15.

4. **Equity Jurisprudence:** JUDICIAL POWER: ORIGIN: ORGANIC LAW: STATUTES: COMMON LAW. Under our system of equity jurisprudence, the powers exercised are purely judicial, derived solely from the organic law, including the common law, and the statutes.

5. **Administration of Charitable Trusts:** STATUTE OF CHARITABLE USES. The provisions for the administration of charitable trusts under the statute of 43 Elizabeth *held* not to be in force in this state.

6. ———: CY PRES: PARENS PATRIÆ: INAPPLICABLE IN THIS STATE. The doctrine of administering trusts for charitable uses *cy pres*, or under the prerogatives of the king as *parens patriæ* by his sign-manual, is inapplicable and has no part or place in the administration of the courts, either at law or in equity in this state.

7. **Testamentary Trusts:** COMMON LAW OF ENGLAND: STATUTE OF CHARITABLE USES. Under the common law of England, *held*, that testamentary trusts for charitable uses were administered by the courts of chancery, exercising their inherent judicial powers only, anterior to and independent of the statute of 43 Elizabeth: such trusts, where the object of the charity or the beneficiaries of the will were general, indefinite and uncertain, being executed through trustees empowered by the testator to designate the object or objects or select the beneficiaries of the charity bestowed.

8. **Doctrine of Charitable Uses:** ADMINISTRATION IN ENGLAND: IN THIS STATE. From the foregoing, *held*, that the doctrine of charitable uses, being administered as a part of the common law jurisdiction of the courts of chancery of England exercising judicial powers only, has been transplanted in this state and become a part of the jurisprudence of the courts possessing common law equity powers; and that in the administration and enforcement of such trusts the courts can exercise only judicial powers, and not those of the extraordinary character mentioned.

9. **Donations by Will for Charitable Purposes Favored by Courts.** Courts will view with favor donations by will for charitable purposes, and will endeavor to carry them into effect where the same can be done consistently with the rules of law.

10. **Construction of Terms of Will.** Terms of the will under consideration construed to give to the trustee power to apply the

property and the proceeds of the same and the sale thereof to some particular and definite charity, according to the judgment of the trustee, once and for all, after which the trustee, and his duties and powers in the premises, cease and terminate, the trust having been fully discharged.

11. **Power Conferred by Will Upon Trustee:** INTERPOSITION BY COURTS. Where ample power is conferred upon a trustee to relieve a bequest of all objections arising from its indefiniteness, and no obstacle exists to the exercise of that power, courts will not interpose to prevent its exercise, when the trust is assailed for uncertainty. *Miller v. Teachout*, 24 Ohio St., 525.

12. **Devise:** TRUSTEE CERTAIN AND ASCERTAINABLE. In a devise, where a certain and ascertainable trustee or trustees are appointed, with full power to select the beneficiaries or designate the objects of the charity, and devise a plan for the application of the funds bestowed, the court will, through the trustee, execute the charity. *Grimes' Executors v. Harmon*, 35 Ind., 199.

13. **Trustee:** DISCRETIONARY POWER: WILL OF TESTATOR. In such a case, the exercise of the discretion or power vested in the trustee will be deemed to be an expression of the will of the testator.

14. **Bequest for Charity:** DIFFERENCE: DEGREE: PRINCIPLE: INDEFINITENESS. There is only a difference in degree and not in principle between a bequest for charitable purposes to the poor of a state, or to charitable institutions of two states, or to other general and indefinite charities, and one to some charity entirely unrestricted and undefined.

15. **Power Conferred on Trustee.** If power may be conferred upon a trustee to designate a charitable object for the testator's bounty, *held*, that unlimited scope may be given regarding the objects of charity, the only limitation being that the object must be a charitable one according to the intention of the testator.

16. **Construction of Will:** INTENTION OF TESTATOR. The provisions of a will, like all other contracts, must be construed with a view of carrying out the intention of a testator, and unless there is something in it contrary to the law of the state, or in contravention of public policy, it will not be declared invalid.

17. **Object of Testamentary Trust.** Where the object of a testamentary trust is clearly charitable, and a trustee is named who is empowered to select for the testator, and as an expression of his will, a charity upon which the property is to be bestowed, and the trustee has accepted or is ready to accept the trust and is willing to carry out its provisions, such bequest, though

entirely general and uncertain in its objects, will not be declared invalid because of the general nature of the object or objects of the charity.

ERROR to the district court for Douglas county. Tried below before FAWCETT, J. *Reversed.*

*J. C. Cowin* and *C. J. Smyth,* for plaintiffs in error.

*George W. Doane, W. G. Doane* and *James B. Kelkenney, contra.*

HOLCOMB, J.

In the will of Joseph Creighton, deceased, among other provisions, appears the following: "Item. I hereby give and bequeath unto the Rt. Reverend James O'Conner, Bishop of Omaha, if he shall survive me, the following lands situate in the county of Douglas, in said state, that is to say," (description of land follows) "if the said Bishop O'Conner do not survive me, then my will is, that the said land shall go to his successor as Bishop of Omaha, my wish and direction is that the said Bishop O'Conner, if he shall survive me, or his said successor as Bishop of Omaha, apply the said lands and the proceeds arising from the same and the sale thereof to some charity according to his judgment but I prefer that the same be applied to the establishment or maintenance of an orphanage."

By the terms of the will, the testator sought to dispose of all his property by three separate and distinct provisions. By the first, certain real estate specifically described was devised to his grand children, they being the children of the contestant, who is his only daughter and sole heir at law; by the second, in the manner herein quoted; and by the third, he bequeathed all the residue and remainder of his property, both real and personal, to his said daughter, Mary Bridget Shelby, in trust, for her children, or such of them as shall be living at her death, such property being charged with the sum of $15 a week to be paid by his said daughter for the maintenance and

support of Mary Furlong, the testator's wife's sister, so long as she may live. The said daughter was nominated as executrix of the will. When it was filed for probate, the daughter withdrew as executrix, and contested the admission to probate and allowance of the will upon different grounds, but mainly because of the alleged incapacity of the testator to make a valid will, the exercise of undue influence, and for the reason the provisions quoted are void for uncertainty and indefiniteness. Upon a hearing of the objections interposed, the will was disallowed and the probating thereof denied. An appeal was taken to the district court, where a hearing resulted in a disagreement of the jury trying the issues of fact. The other provisions of the will having been amicably arranged by the interested parties, a motion was presented to dismiss the appeal, for the reason that the provisions heretofore quoted rendered the will, as to the property therein mentioned, null and void for indefiniteness and uncertainty, passing nothing thereby to the trustee named. The motion was sustained and the appeal dismissed. From the judgment of dismissal the case is brought here for review.

As thus presented, the sole question involved is as to the validity of the provisions of the will with respect to the disposition or attempted disposition of a portion of the property of the testator for charitable purposes. While some other questions are briefly argued relative to the course of proceeding taken by appellants and plaintiffs in error, we find no reason why the trustee should not be heard in this court. His case, we are disposed to the view, is properly before us for consideration upon the merits of the controversy with respect to that part of the instrument by which the testator sought to apply a part of his property to objects of charity, and this without necessarily determining the status, in this proceeding, of the St. James Orphan Asylum, which it is claimed has been made the beneficiary under the terms of the will.

The first and last of the three provisions heretofore referred to being unobjectionable, and having been eliminated from the controversy so far as the present proceedings are concerned, the litigation has resolved itself into the one proposition as to the force and effect of the second provision of the will, whereby the testator sought to apply the property described to a charitable object. If this provision fails, the property passes to the contestant as the sole heir at law of the testator.

We are indebted to counsel on both sides for their able and learned discussion of the many questions involved, and the intelligent manner in which the subject is presented, as well as the exhaustive research of authorities evidenced by the many citations in the several briefs now before us.

While the plaintiff in error argues from different hypotheses as to the validity of the controverted provisions of the will, we are strongly of the opinion that all must be discarded as unwarranted by the positive language used and therefore untenable, save the fourth and last one, which we conceive to be the only position which has real and substantial merit to rest upon. The fourth position is, that if a trust is created by the terms of the will, it is for charitable uses, and the fact that the beneficiary or beneficiaries are indefinite and uncertain does not therefore render it void and of no force and effect. On this proposition the contestant takes direct issue, and therein lies, in our judgment, a correct solution of the matter in litigation.

The question is one which, in the beginning, we are constrained to say, is surrounded with difficulties, and regarding which there is much diversity of opinion and an irreconcilable conflict in the authorities adverting to or passing upon the subject. These divergent views, as it occurs to us, are occasioned by a difference of opinion as to the correct doctrine of charitable trusts by devise under the common law, and controlled also, to some extent, by statutory provisions governing the subject. By

55

statute, so much of the common law as is applicable, and not inconsistent with the federal constitution or the laws and constitution of this state, is declared to be the law here. Hence it becomes of some importance to ascertain what, if any, difference exists between the doctrine of charitable trusts and that of trusts of any other character under the common law. It is admitted that devises for charity, where the beneficiaries were general, indefinite and uncertain, were enforced by the English courts of chancery; but it is insisted that the power thus exercised was not by virtue of the common law jurisdiction of such courts, but by specially conferred authority by the statute of 43 Elizabeth, the power and prerogatives of the king as *parens patriæ*, by his sign-manual, and the doctrine of *cy pres* which obtained in that country, whereby, if a testamentary gift to charity could not be applied as directed by the testator, it would be applied as nearly as possible, or as closely to the presumed general intention of the donor as expressed in the will. It needs no argument or elaboration to reach the conclusion that, under our system of equity jurisprudence, the powers exercised are purely judicial, derived solely from the organic law and the statutes including the common law, and that the statute of 43 Elizabeth mentioned, the doctrine of administering trusts *cy pres*, or under the prerogative of the king as *parens patriæ* by sign-manual, have no part or place in the administration of the courts, either at law or in equity, in this state.

While the earlier opinions of the courts of this country, following *Baptist Association v. Hart's Executors*, 4 Wheat. [U. S.], 1, held to the doctrine that charitable trusts in England were administered under the provisions of the statute of 43 Elizabeth, and the extraordinary powers above referred to, in the later and more thoroughly considered case of *Vidal v. Girard's Executors*, 43 U. S., 126, a different conclusion was arrived at, and in that opinion it was announced that charitable trusts were administered by the courts of chancery of England exercising

their inherent judicial powers only, anterior to and independent of the statute of 43 Elizabeth, upon which their jurisdiction to administer such trusts was in former opinions held to rest.   In the Girard will case, in which the beneficiaries of the will were of a general, uncertain and indefinite class, says Mr. Justice Story, who wrote the opinion: "In the next place it is said that the beneficiaries who are to receive the benefit of the charity are too uncertain and indefinite to allow the bequest to have any legal effect, and hence the donation is void and the property results to the heirs."   After discussing a number of cases decided by the chancery courts of England, and expressing the opinion that the jurisdiction under which the court acted belonged to it in the exercise of its judicial powers independent of the statute of 43 Elizabeth, the author further says: "In some of these cases the charities were not only of an uncertain and indefinite nature, but, as far as I can gather from the imperfect statement in the printed records, they were also cases where there were no trustees appointed, or the trustees were not competent to take."   See, also, *Estate of Hinckley*, 58 Cal., 457, and *Howe v. Wilson*, 91 Mo., 45.

The views expressed by Judge Story, both as to the common law jurisdiction of courts of chancery, and the validity of a devise for charity, although general and indefinite, appear to be better supported by authority and sounder in principle, and to have been adopted by a majority of the courts of last resort of the different states of the union.   From a consideration of the foregoing, we are disposed to the view that the doctrine of charitable trusts was a part of the common law jurisdiction of the courts of chancery of England exercising judicial powers only, and as such has been transplanted into the courts of this state possessing common law equity powers, and that in the administration and enforcement of charitable trusts of the character under consideration the exercise of the powers of  the court must be solely judicial and none other.

The provision of the will under consideration is a model of clearness and conciseness of expression, and freedom from ambiguity or uncertainty in the meaning of the language used to denote the testator's will and intention. It is clearly and definitely expressed, that it is the will of the testator that the property described should descend to the Bishop of Omaha, the proceeds of the same and the sale thereof to be applied to some charity, according to the judgment of the trustee, with an expression of preference that the devise be given to an orphan asylum. To avoid any contingency, it is provided that if the trustee named shall not survive the testator, then the property shall go to his successor as Bishop of Omaha, in trust, for the same purpose. It is but a natural and probable inference, that in the trustee designated, as well as his successor, whoever he might be personally, the testator reposed implicit reliance and unreserved confidence in his integrity and personal character, as one who, by reason of his chosen work in life and piety, was peculiarly fitted and well qualified to worthily bestow the endowment upon some deserving charity, to be by him selected in the execution of the charitable and benevolent intentions of the testator. It is entirely certain who the trustee is, and that the bequest was made for a charitable purpose. While a preference is expressed, the objects of the charity from which the selection is to be made are of the most general character. Is the devise to fail for that reason alone? Is it competent for a testator to devise property to a trustee with power in him to select or designate the object or objects upon which the charity is to be bestowed? In determining the question of the validity of the bequest, we should be mindful of the rule that courts view favorably donations by will for charitable purposes, and will endeavor to carry them into effect where the same can be done consistently with the rules of law. *Duggan v. Slocum*, 83 Fed. Rep., 244; *State v. Smith*, 16 Lea [Tenn.], 664; *Estate of Hinckley, supra.*

It is perhaps well to note here that, in the bequest under consideration, it is not attempted to establish a perpetual trust fund, the income or increase of which is to be devoted to objects of charity general in their nature, from which a selection or designation is to be made by the trustees, the same to be subject to their will and control, with power to change according to their discretion and as they may deem desirable. Whether or not this may be done, it is unnecessary here to determine. By the terms of the will in controversy it is proposed, through the power of the trustee in him vested, to apply the property and the proceeds of the same and the sale thereof to some particular and definite charity, according to the judgment of the trustee, once and for all, after which the trustee, and his duties and powers in the premises, cease and terminate, the trust having been fully discharged. In this case the trustee is willing to, and has, accepted the trust and has sought to carry out the will of the testator by conveying the property to an orphan asylum, in conformity with the preference expressed by the testator.

In *Miller v. Teachout*, 24 Ohio St., 525, a testator had devised the residue of his estate to an executor to be invested for the use of his wife during her lifetime, and at her death, the property should be appropriated by the executor to the advancement of the Christian religion, in such manner as, in his judgment, would best promote the object named. The executor accepted the trust. "*Held*, That the testator had conferred ample power upon the executor to relieve the bequest of all objections arising from its indefinite character, and that so long as no obstacle exists to the exercise of the power at the proper time, the courts of this state will not, in advance of that time, interpose, on the application of the heir, to prevent its exercise." Says Judge Day in the opinion: "Although the power of the courts of this state to devise a scheme for the application of a vague charity may well be questioned, it does not follow that the testator can-

not create an agency to do it for him; and it may be regarded as settled, that where a testator, creating a trust to a charitable use, defines the intention of the trust, and invests the trustee with discretionary power over the application of his bounty to the objects, or for the purposes intended, the bequest will not be held invalid so long as there is no obstacle to the exercise of the power confided to the trustee, for the exercise of the power may relieve the bequest of all objections arising out of its vague and indefinite character"; and after citing a number of authorities in support of the proposition, he continues: "Nor does it make any difference, in this respect, whether the trust be of a mere administrative character in the hands of the executor, or whether it be confided to another. In either case, the will of the testator may be ascertained and made certain by those to whom he has entrusted discretion and power for that purpose, and their acts may be justly regarded as the definite expression of his own purpose." Further on, after discussing the power of the executor to make the application of the bounty of the testator to the general charitable object mentioned, he says: "So long, then, as the power thus conferred exists, ready to be exercised, and may be exercised in accordance with the will, the bequest can not be regarded so defective as to be incapable of execution."

In *Grime's Executors v. Harmon*, 35 Ind., 199, cited by contestant in support of the contention that the provisions under consideration are void for indefiniteness and uncertainty, it is declared in one paragraph of the syllabus that, in a case where a charity does not fix itself upon any particular object, but is general and indefinite, and "certain and ascertainable trustees are appointed with full powers to select the beneficiaries and devise a scheme or plan of application of the funds appropriated to the charitable object, the court will, through the trustees, execute the charity." Says the author of the opinion, Judge Buskirk, after reviewing the many authorities on the question: We claim that they establish

these principles: "If the charity does not fix itself upon any particular object, but is general and indefinite, such as the promotion of the moral and intellectual condition of a race, or the relief of the poor, and no plan or scheme is prescribed, and no discretion is lodged by the testator in certain and ascertainable individuals, it does not admit of judicial administration. In such a case in England the administration of the charity is cast upon the king, to be executed *cy pres*, while in this country the property devised lapses to the next of kin. If, however, in such a case, certain and ascertainable trustees are appointed, with full powers to select the beneficiaries and devise a scheme or plan of application of the funds appropriated to the charitable object, the court will, through the trustees, execute the charity."

In *Fontain v. Ravenel*, 58 U. S., 369, the residue of an estate, left in trust for the use of the wife of the testator during her lifetime, was to be disposed of for such charitable institutions in Pennsylvania and South Carolina as the executors might deem most beneficial to mankind. The persons named as executors died during the lifetime of the wife, and before any appointment of the charity was made or attempted. It was there held that the charity could not be carried out, because the executors were vested with mere powers of appointment, and this not having been exercised, the trust must fail. The logic of the opinion, as well as its direct expression, is that an appointment by the executors at the proper time, under the powers vested, had they lived, would have rendered the trust valid and enforceable in the courts of equity.

In *Russell v. Allen*, 107 U. S., 163, a more recent case on the subject, Mr. Justice Gray gives expression to the following views: "They may, and indeed must, be for the benefit of an indefinite number of persons; for, if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness, which is one of the characteristics of a legal charity. If the founder

describes the general nature of the charitable trust, he may leave the details of its administration to be settled by trustees under the superintendence of a court of chancery."

In *Dye v. Beaver Creek Church*, 26 S. E. Rep. [S. Car.], 717, decided in 1897, the court, after referring to the many conflicting authorities on the subject, deduces, among others, the following principle: "If a trustee is appointed by the testator, and the will shows that the object of the devise, though expressed in general terms, is for a charitable use, the trust will be declared valid. In such a case the duty devolves upon the trustee of devising a scheme for carrying the trust into effect." In the same opinion it is said: "The reason a trustee is allowed to enforce a trust, the object of which is only expressed in general terms, is that in exercising his discretion he carries out the intention of the testator."

*In re Murphy's Estate*, 39 Atl. Rep. [Pa.], 70, decided in 1898, it is held: "A bequest of the residue of an estate 'to be divided among such benevolent, charitable and religious institutions and associations as shall be selected by my executors,' is not void for uncertainty."

Authorities holding generally to the views hereinbefore indicated may be multiplied, but it would serve no useful purpose, and we content ourselves with referring only to the following in harmony with those already quoted from: *Duggan v. Slocum*, 83 Fed. Rep., 244; *Hoeffer v. Clogan*, 49 N. E. Rep. [Ill.], 527; *Staines v. Burton*, 53 Pac. Rep. [Utah], 1015; *People v. Cogswell*, 45 Pac. Rep. [Cal.], 270; *Phillips v. Harrow*, 61 N. W. Rep. [Ia.], 434; *Fox v. Gibbs*, 29 Atl. Rep. [Me.], 940; *Powell v. Hatch*, 14 S. W. Rep. [Mo.], 49; *Minot v. Baker*, 17 N. E. Rep. [Mass.], 839; *Claypool v. Norcross*, 9 Atl. Rep. [N. J.], 112; *Dodge v. Williams*, 50 N. W. Rep. [Wis.], 1103; *Darcy v. Kelley*, 26 N. E. Rep. [Mass.], 1110; *Bedford v. Bedford's Adm'r*, 35 S. W. Rep. [Ky.], 926; *Guilfoil v. Arthur*, 41 N. E. Rep. [Ill.], 1009.

Holding to the doctrine contrary to the authorities

heretofore cited may be mentioned *Tilden v. Green*, 130 N. Y., 29, as a leading authority. In that case it is said, "The law is settled in this state that a certain designated beneficiary is essential to the creation of a valid trust"; following *Levy v. Levy*, 33 N. Y., 107, wherein it is said: "If there is a single postulate of the common law established by an unbroken line of decision, it is that a trust without a certain beneficiary who can claim its enforcement, is void," no distinction being made between trusts generally and a trust for charitable purposes. Says Brown, J., the author of the opinion in the *Tilden Case:* "The objection is not obviated by the existence of a power in the trustees to select a beneficiary unless the class of persons in whose favor the power may be exercised has been designated by the testator with such certainty that the court can asertain who were the objects of the power." The opinion in this case was, in a manner, dependent upon and governed by the statutes of that state, but to what extent, we have deemed it unprofitable to examine. It is reasonably clear, that the earlier decisions of the courts of that state rested upon the assumption that the doctrine of charitable uses was no part of the common law administered by the chancery courts of England, but received its support from, and grew out of, the statute of 43 Elizabeth, and that this statute was not applicable or in force in the state of New York. The opinions of the courts of Virginia, Maryland and perhaps some other states, are in the main in harmony with those of New York.

An examination of the authorities cited by counsel for contestant holding bequests invalid for uncertainty and indefiniteness, shows that the decisions in many of them rest upon facts peculiar to the case which was under consideration; such as a failure to nominate trustees; to provide a means for the selection of beneficiaries; or to empower trustees or executors to make selection; or the devise was to charity generally, without designating the manner in which the charity may be executed;

while some of the cases refer to trusts general in their character as distinguished from a charitable trust.

Another class of cases may be briefly referred to, which in principle may assist in arriving at a correct conclusion in the case at bar. The rule as to executory devises, depending for their complete execution upon the happening of some future event or selection, has invariably received judicial sanction, and such devises have been held valid. Thus, a bequest may be made to a corporation to be organized after the death of the testator, as was the case in the *Tilden Will Case, supra;* for a site for the erection of a hospital for foundlings, to be built by a corporation to be established by congress,—*Ould v. Washington Hospital,* 95 U. S., 303; for the incorporation of a society for the purpose of maintaining and supporting aged, decrepit and worn-out sailors,—*Inglis v. Sailors' Snug Harbour,* 3 Pet. [U. S.], 99; "for the purpose of founding an institution for the education of youth in St. Louis county, Missouri,"—*Russell v. Allen,* 2 Sup. Ct. Rep., 327. In all these cases, and many others which might be cited, the bequest was held to be valid and treated as an executory devise, depending upon the happening of some future event, which, when occurring, would vest the donation as contemplated by the testator.

In the present case it is urged that, while in many of the states charitable gifts general in their nature have been held valid, there was in all such cases a limitation as to the locality of classes from which the beneficiaries were to be chosen. To us, conceding the proposition, which we think does not hold good in many cases, this seems to be only a difference in degree, and not in principle. If a bequest to "the poor of California," or "the children of the colored race," or "the charitable institutions of Pennsylvania and South Carolina," or "to the Beaver Creek Church for poor children for their tuition," or for "benevolent and charitable purposes to be used in Cumberland county, Maine," is valid, and capable of being administered in courts of equity, we are unable to

understand why a bequest to a charity unnamed, to be selected by the trustee, is not within the principle enunciated in the many cases referred to. In *Powell v. Hatch, supra*, a bequest "to such charitable purposes as my said trustee may deem best" was held valid. Says Barclay, J. in speaking of the case then at bar and another case decided prior thereto: "The only difference of any consequence between the facts presented in the two cases is, that in the earlier one the discretion was to be exercised among 'the charitable institutions of St. Louis,' while in the present, no limitation with respect to locality appears. We do not regard this difference in the facts as affecting, in anywise, the application of the principles established in the former case." If restrictions, either as to locality, or numbers included in a class of beneficiaries, are necessary to the validity of a charitable bequest, we know of no rule by which the line may be drawn. If power may be conferred upon a trustee to designate a charitable object for the testator's bounty, we doubt not that unlimited scope may be given, the only limitation being that the object must be a charitable one according to the intention of the testator.

This contract, like all others, must be construed with a view of carrying out the intention of the testator, and unless there is something in it contrary to the laws of the state, or in contravention of public policy, no reason exists for declaring it invalid. The object of the trust is clearly charitable, and is specified as such in so many words. A trustee is named, and is empowered by the testator to select for him, and as an expression of his will, a charity upon which the property in controversy is to be bestowed. The trustee has accepted the trust. He is willing to carry out its provisions, and has attempted to do so. He stands ready to make certain the very matter of uncertainty upon which contestant relies for a judgment. The will is for an object which has always been looked upon with favor by the courts. It is one of the most worthy of

all bequests, save perhaps near kindred, having, by reason of their kinship, peculiar claims to the consideration of a testator in the distribution of his property. The bequest is sanctioned by law and contravenes no public policy. Its invalidity can be declared only by the adoption of a doctrine at variance with the great weight of authority, to wit, that the beneficiaries shall be so certain that they may come into court claiming the benefits of the trust, and demand its execution. We do not think this doctrine should be adopted in this state, and hence hold to the view that where a bequest for a charitable purpose, though entirely general and uncertain in its character, is made to a trustee who is empowered to select the object of the charity, and who is willing to or has accepted the trust, the will will not be declared invalid because of the general nature of the object or objects of the charity. The decree of the district court must be reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.