MAE H. MAXWELL, APPELLEE, v. JACOB A. MAXWELL: HENRY E. MAXWELL, EXECUTOR, APPELLANT.

FILED JULY 20, 1921.    No. 21427.

1. **Appearance.** Where, in a motion to quash the service of summons upon him, a defendant pleads matter amounting to a demurrer to the petition, his appearance is general and the court has jurisdiction of his person. *Bankers Life Ins. Co. v. Robbins*, 59 Neb. 170, followed.

2. **Wills: EQUITABLE CONVERSION.** A testator devised and bequeathed real estate and personalty in this state to his wife for her life,

directing that, at her death, all the property be sold and the proceeds divided equally among his children. *Held*, that the direction to sell worked an equitable conversion of the real estate into personalty at the time of the testator's death.

3. **Divorce:** ALIMONY: AWARD OF UNDIVIDED REMAINDER. Where an unambiguous will, by the terms of which the real estate thereby devised becomes equitably converted into personalty, has been admitted to probate without objection, and the estate thereby conveyed has been fully ascertained and inventoried by the executor, and all debts have been paid, and administration has been fully completed except final distribution, which is delayed only by the existence of the life estate, an undivided remainder in the estate is not in the custody of the county court so that the district court may not award it to the wife of the remainderman in a suit by her for divorce.

4. ———: ———: ———. Under such circumstances and conditions the court, upon granting a divorce to an innocent wife, has power to award to her the husband's undivided interest in remainder, in appropriate proceedings in which the property is fully identified and the court has jurisdiction of the parties.

5. **Death:** PRESUMPTION. Evidence examined, and *held* that, under the facts and circumstances, the presumption of death from seven years' continued absence did not arise.

APPEAL from the district court for Dodge county: FREDERICK W. BUTTON, JUDGE. *Affirmed.*

*Morsman & Maxwell,* for appellant.

*Abbott & Rohn,* contra.

CAIN, C.

On September 21, 1918, the plaintiff Mae H. Maxwell, filed her petition in the district court for Dodge county, Nebraska, against her husband, Jacob A. Maxwell, and Henry E. Maxwell, as executor of the last will of Samuel Maxwell, deceased, and trustee of the estate. The object of her suit was to obtain a divorce and the custody of their two minor children, and to have awarded to her the undivided one-ninth interest of her husband in the estate of his deceased father, Samuel Maxwell, which was alleged to be in the possession and under the control of the defendant Henry E. Maxwell as executor and trustee.

The defendant husband did not appear, and trial was had to the court upon plaintiff's petition and the answer thereto of Henry E. Maxwell. The court found in plaintiff's favor, granting her a divorce and custody of the minor children, and assigned and awarded to her the undivided one-ninth interest of her husband in the estate of his father. The defendant Henry E. Maxwell alone appeals.

The points argued in appellant's brief and relied upon by him for a reversal may be conveniently stated as follows: (a) That the lower court erred in overruling his special appearance and motion to quash the service of summons made upon him in Douglas county. (b) That as the will of Samuel Maxwell gave his widow, Elizabeth A. Maxwell, a life estate in all his property, and directed that upon her death all the property should be sold and converted into money, an equitable conversion thereof took place upon the testator's death, and that it is now all personalty, and that as final distribution of the estate has not been made by the county court of Dodge county, where the administration is pending final distribution, the property sought to be awarded to the plaintiff in this suit is in *custodia legis,* and hence cannot be reached by this or any other process; that, on account of a possible conflict between the judgment rendered in this case and the judgment of the county court of Dodge county to be rendered on final distribution, he may be required to pay the money twice. (d) That there is no legal way by which the interest of the defendant husband in his father's estate can be reached by or awarded to plaintiff. (e) That the defendant Jacob A. Maxwell having been absent and unheard of for more than seven years, the legal presumption of his death obtains and defeats the suit.

Consideration of these questions requires a somewhat extended statement of the petition. On September 21, 1918, the plaintiff filed her positively verified petition against defendants, setting forth the following facts, which are sustained by the evidence, to wit: That she

was married to the defendant Jacob A. Maxwell in Lincoln on November 23, 1898, and thereafter in 1906 they removed to Dodge county, where she has ever since resided; that plaintiff and her husband resided together in Fremont until April 9, 1911; that three children were born to them, one a daughter who is now of age, another daughter 16 years of age, and a son 14 years of age; that these children have resided at Fremont with their mother at all times since April 9, 1911, on which latter date the defendant husband, being then an able-bodied man of the age of 43 years, deserted and abandoned plaintiff and his children, and ever since has been wilfully absent from them without just cause or excuse and has not contributed to their support; that after her husband's desertion plaintiff secured employment as a clerk in a local store, and for the seven years next before the filing of the petition has by her earnings wholly supported and maintained herself and the children, and that the whereabouts of the defendant husband has been unknown to her ever since his departure, notwithstanding that she has made investigation and inquiry to ascertain the same. As bearing upon the interest of her husband in his father's estate, the plaintiff in her petition further alleged that Samuel Maxwell, father of her husband, died testate on February 11, 1901, a resident of Fremont, in Dodge county, and seised of real and personal property; that by his will, after making certain specific bequests, he gave and bequeathed all the residue of his property to his widow, Elizabeth A. Maxwell, for life, and directed that on her death the estate be sold and converted into cash and distributed in equal shares to his nine children, of whom the defendant Jacob A. Maxwell is one; that said will was duly admitted to probate in the county court of Dodge county, Nebraska, in the year 1901, and the defendant Henry E. Maxwell, the executor named therein, was duly appointed and qualified as such executor; that due notice to creditors was given and all claims barred and all debts and charges paid. The petition further avers, and there

is some evidence tending to support the averment, that Henry E. Maxwell, more than ten years before the commencement of this action, fully completed the administration of the estate except final distribution, and that at about that time it was mutually agreed between him and the other heirs that he should continue in possession and control of the assets of the estate, paying the widow an allowance from the income thereof, and on her death convert the property into cash as provided by the will; that, while defendant Henry E. Maxwell continues in his office as executor of the estate, he does so as trustee of the property for the widow and children; that there is now in his hands more than $20,000 in cash, mortgages, and other securities, together with 260 acres of land in Cass county and 22 acres in Dodge county, Nebraska, which are fully described in the petition and of which the testator died seised. The petition further alleges that the value of the one-ninth interest of the defendant Jacob A. Maxwell in the estate is $10,000, and that plaintiff has no property whatever for the support and maintenance of herself and children. There were other allegations upon which to found an injunction against the defendant executor disposing of any of the property. Plaintiff prayed for an absolute divorce, custody of the minor children, and that the court award and decree to her the undivided one-ninth interest and share of Jacob A. Maxwell in the estate of Samuel Maxwell, deceased, for the support and maintenance of herself and minor children and as alimony and as her distributive share of the property of her husband, and that the defendant executor be required to answer as to the property of defendant Jacob A. Maxwell in his possession and be ordered and directed to pay over to plaintiff on the death of the widow, Elizabeth, one-ninth part of said estate, and be perpetually enjoined from delivering or surrendering the same to Jacob A. Maxwell, or any one other than the plaintiff; and that notice be given to defendant Henry E.

Maxwell, and for other relief. The widow, Elizabeth, is still living.

Upon the filing of this petition a temporary restraining order was granted by the court enjoining the defendant Jacob A. Maxwell from collecting, receiving, or assigning any part of his undivided interest, and also ordering that a copy of the order, together with a copy of the petition in the cause, be served upon the defendant Henry E. Maxwell, which was done on February 26, 1919. On February 18, 1919, another order was entered enjoining the appellant from delivering or surrendering to Jacob A. Maxwell or to any one else any part of the undivided one-ninth interest. On March 24, 1919, Henry E. Maxwell, the appellant, filed a motion to quash the service of the summons made upon him by the sheriff of Douglas county, and objecting to the jurisdiction of the court over his person. The grounds of this motion were that the summons was issued and served without authority of law, and is null and void, and that the appellant then was, and for more than 30 years theretofore, had been a resident of Douglas county, and at no time a resident of Dodge county. Then follows the fourth ground of the motion, which is as follows: "That the allegations of the plaintiff's petition herein show on their face that the will of said Samuel Maxwell, deceased, worked an equitable conversion of his real estate into personalty at his death, and that the legal title to the whole of said estate is vested in this impleaded defendant as executor of said will, subject to the life estate of Elizabeth A. Maxwell, until the final settlement of said estate and distribution thereof, pursuant to the terms of said will."

On May 10, 1919, his motion was overruled, and on May 15, 1919, plaintiff filed a motion and affidavit for service by publication on the defendant Jacob A. Maxwell and an order for such service was made on the same day. On June 6, 1919, proof of publication of the notice was filed. It will be borne in mind that the summons was served upon the defendant Henry E. Maxwell in

Douglas county on February 26, 1919, and that application for service by publication upon the defendant Jacob A. Maxwell was not made until May 15, 1919. Appellant contends that the service was invalid and the issuance of the summons unauthorized for the reason that the action under section 7580, Rev. St. 1913, could not be deemed to be commenced or brought until the date of the first publication of the notice, and hence that the action could not be deemed "rightly brought" under section 7627, Rev. St. 1913, at the time the summons was issued. In a word, appellant contends that the summons was prematurely issued and the service thereof should have been quashed. On the other hand, appellee contends that, as plaintiff was a resident of Dodge county, and the action was one for divorce, under section 1567, Rev. St. 1913, the action was rightly brought within the meaning of section 7627 on the filing of her petition, and, under the authority of *Eager v. Eager*, 74 Neb. 827, holding that the district court may send its original process to any part of the state unless restricted by statute, that the court's order of September 21, 1918, directing that service of summons be had in Douglas county upon the defendant Henry E. Maxwell was a valid order in the exercise of the court's original powers as a court of equity. We, however, do not think it necessary to discuss these respective contentions for the reason that we have come to the conclusion that the motion to quash the service invoked the powers of the court on the merits of the controversy and constituted a general appearance, thereby waiving all defects.

We have set out the allegations of the petition at some length as they are for the most part not seriously denied and are established by the evidence. The fourth ground of the motion to quash, which we have heretofore set out, in our judgment, amounted to a general demurrer to the petition. Referring to the allegations of the petition it invoked the legal proposition that the will, by directing the sale of the real estate, worked an equitable conversion of all the real estate into personalty at the time of

the testator's death, and the legal title to which was vested in the defendant executor, subject only to the life estate of the widow, Elizabeth, until the final settlement and distribution of the estate, thereby putting the property beyond the reach of plaintiff's action. The necessary inference from these statements is that the petition failed to state a cause of action against appellant and, as to him, should be dismissed. It is true that no dismissal was asked, but it is likewise true that none is asked by a general demurrer. We are convinced that the moving defendant entered upon the merits of the controversy in assigning his fourth ground, which brought him within the rule of this court as constituting a general appearance. *Bankers Life Ins. Co. v. Robbins,* 59 Neb. 170, was a case in many respects very similar, and the remarks of Sullivan, Judge, in that opinion are peculiarly applicable to this case. The rule there laid down is as follows: "If a defendant invoke the judgment of the court in any manner, upon any question, except that of the power of the court to hear and decide the controversy, his appearance is general." This rule is supported by of.... decisions of this court: *Lillie v. Modern Woodmen of America,* 89 Neb. 1; *Rakow v. Tate,* 93 Neb. 198. Unless the appellant intended to invoke the powers of the court by the fourth ground of his motion and secure a dismissal of the action as to himself, it was meaningless or surplusage. We hold that it was an entry upon the merits of the case, and therefore constituted a voluntary general appearance, and that there was no error of the lower court in overruling the motion. After appellant's motion to quash was overruled, he filed an answer, appeared at the trial, cross-examined plaintiff's witness, and even testified himself.

The will of Samuel Maxwell contained the following: "On the death of my beloved wife all my estate of every name and kind shall be sold and the proceeds thereof divided equally among my children"—and appellant contends that this provision worked an equitable conversion

of the real estate into personalty at the time of the testa-
tor's death.   In this we think appellant is right.   *Chick
v. Ives,* 2 Neb. (Unof.) 879; *In re Estate of Willits,* 88
Neb. 805; *Gotchall v. Gotchall,* 98 Neb. 730; *Coyne v.
Davis,* 98 Neb. 763.   And in this opinion we shall treat
the undivided one-ninth interest as personalty.

Appellant next contends that the property is *in cus-
todia legis,* and, hence, "cannot be reached by attachment,
garnishment, or other legal process," citing, among others,
the cases of *Sturtevant v. Bohn Sash & Door Co.,* 59 Neb.
82; *Veith v. Ress,* 60 Neb. 52, and *Anheuser-Busch Brew-
ing Ass'n v. Hier,* 52 Neb. 424, in support of his conten-
tion.   In the *Sturtevant* case money was about to be paid
to the clerk of the district court to be distributed under
its decree, and this court held that it was *in custodia
legis,* and, hence, not subject to garnishment process
issued by the county court, citing the *Hier* case, which
we shall presently notice in support of its conclusion.   In
the *Veith* case this court held that partnership property
in the hands of a receiver was in the custody of the law
and could not be reached by garnishment.   The reason
for the rule is well stated in the opinion in the *Hier* case
in the following language:   "The rule that personal prop-
erty *in custodia legis* is not subject to attachment or
garnishment was adopted for the protection of the officer,
and to avoid collision of authority."   It must, we think,
be conceded that, if the judgment of the district court in
this case will conflict with any lawful judgment of the
county court of Dodge county hereafter to be rendered on
final distribution, this property is *in custodia legis* and
beyond the reach of process in this case.   But we do not
think such a conflict of judicial authority legally possible.
The disposition of the estate is definitely fixed by the
terms of the will alone, and does not depend upon any
possible order or judgment of the county court.   The will
is unambiguous, and has been duly admitted to probate
without objection, and all parties have acquiesced in its
provision.   There are no rival claimants and no creditors,

and a complete inventory of the estate was made. Besides, this is a divorce action, and the judgment is merely for the purpose of fixing the status of the parties to it and the wife's interest in the property. Appellant suggests the suppositious contingency of the death of Jacob A. Maxwell before the order of final distribution is made in the county court and before the order is made directing him to pay the one-ninth share in cash to the heirs. We do not think such an order within the range of lawful possibility, since the judgment of the district court, considered either as an enforced assignment of the husband's one-ninth interest to the wife or as an adjudication of her interest in his property, exhausts the fund and there would be nothing for the heirs to take. Every married man in this state holds his property subject to the inchoate interest of his wife therein, which interest comes into existence either upon his death or a divorce on any ground except the wife's adultery. His estate descends or is devised or bequeathed subject to this interest and, if it is the whole of a fund, as in this case, the heirs take no interest therein. If considered as an assignment or an appropriation, the result is that the husband will not die seised of it and the heirs have no interest. This sufficiently distinguishes the instant case from the cases cited. Our conclusion on this point is that this one-ninth interest is not *in custodia legis* within the meaning of the rule. There is, therefore, no possibility that appellant will have to pay this money twice.

Appellant next contends that there are no legal means whatever by which this undivided interest of Jacob A. Maxwell can be reached and appropriated to the support of his wife and children, and suggests that the only way by which this judgment may be sustained is by judicial legislation, but we think his contention is without merit. Section 1584, Rev. St. 1913, is as follows: "Upon every divorce from the bonds of matrimony for any cause excepting that of adultery committed by the wife, and also upon every divorce from bed and board, from any cause,

Maxwell v. Maxwell.

if the estate and effects restored or awarded to the wife shall be insufficient for the suitable support and maintenance of herself and such children of the marriage as shall be committed to her care and custody, the court may further decree to her such part of the personal estate of the husband and such alimony out of his estate as it shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case."

It will be noted that the foregoing section expressly empowers the court, upon granting a divorce where the wife is innocent of adultery, to award her "personal estate of the husband." We think the undivided one-ninth interest of the husband is personal estate within the meaning of the section quoted, and that, under it, the court had jurisdiction to award it to the plaintiff. The term "personal estate" is one of wide signification and includes everything, not real estate, which has an exchangeable value or goes to make up one's wealth or estate. 32 Cyc. 648; *Low v. Rees Printing Co.,* 41 Neb. 127. And, even if the defendant husband's interest were regarded as real estate, the objection would still be unavailing, since section 1587, Rev. St. 1913, by clear, reasonable inference, authorized the court to award real estate of the husband to an innocent wife upon a divorce being granted, where the decree awards it to her in express terms. *Cizek v. Cizek,* 76 Neb. 797, cited by appellant, relates solely to real estate, and, also, was decided before the enactment of section 1587, and, hence, has no bearing upon this case.

In *Gaster v. Estate of Gaster,* 92 Neb. 6, 11, this court said with reference to section 1587, Rev. St. 1913: "The amended section leaves it to the discretion of the court to award to the innocent party a share or interest in the real estate of the guilty party." In *Rhoades v. Rhoades,* 78 Neb. 495, this court held that an innocent wife could maintain an action for alimony, where she sought merely the appropriation of real estate of her husband, upon service by publication, and further held as follows:

"Service by publication is authorized by section 77 of the Code in an action by a wife for alimony and support of her child against the husband, who deserted his family and became a nonresident of the state, where the only relief sought is the appropriation of the real estate of the husband, situated in the county where the action is brought, to the payment of the amount that should be allowed for such alimony and support. Such an action is substantially one *in rem,* and the court has jurisdiction upon the completion of the service by publication to decree the relief sought.

"In such an action, residence of the wife in the county where the property of the husband is situated is not required."

*In re Estate of Strahan,* 93 Neb. 828, this court held: "Under the present law the interest of the wife in the personal property of her husband is similar to that of a silent partner."

In *Hays v. Hays,* 75 Neb. 728, this court said: "Where a court has jurisdiction of the parties, its authority to grant a divorce carries with it authority to adjust the property rights of the parties with respect to personal property within its jurisdiction."

It is too firmly established in the jurisprudence of this state to be questioned that in a divorce suit, where the court has jurisdiction of the parties, it has power to adjust all their respective property interests.

The case of *Catton v. Catton,* 69 Wash. 130, is much like the instant case in this respect. In the *Catton* case the wife brought an action for divorce in King county, seeking to appropriate certain real estate in Grant county and other real estate and personal property in Pierce county. Defendant transferred his Pierce county property to a third person and some of his property was taken under execution. By supplemental bill plaintiff brought in the transferees and the sheriff who held the execution to restrain them from disposing of the property. The decree granted the wife a divorce, found the transfers fraudulent

Maxwell v. Maxwell.

and void, and awarded the wife certain of the property. The Washington statute is similar to our own, and the court in sustaining the decree said: "The disposition of the property of the parties is an incident to the divorce. Where the property is brought into the action by description, the court thereafter acquires jurisdiction over it. Otherwise, it would be necessary to bring an action in each county where the parties may have property. This was not the intention of the statute. Section 204, Rem. & Bal. Code, which provides that actions for possession of, or affecting the title to, real estate shall be commenced in the county where the subject of the action is situated, clearly does not apply to divorce actions, because the residence of the plaintiff determines where such action shall be brought. The superior court of King county, therefore, had jurisdiction over the property of the parties in Pierce county."

In *Wesner v. O'Brien,* 56 Kan. 724, the court sustained a judgment rendered on constructive service which appropriated land in that state of a nonresident defendant for his wife's alimony, though the land was not situated in the county where the action was brought and no step was taken to bring the property within the control of the court other than the commencement of the suit and publication of the notice. The court said: "A seizure of land in such a case is little more than a form. The essential matter is that the defendant shall have legal notice of the proposed appropriation, and this is afforded by the publication notice which warns the defendant that one of the purposes of the proceeding is the sequestration of the land. It refers interested parties to the petition, in which the land is definitely described, and wherein it is asked that the land be set apart as alimony. A formal seizure is no more essential to the jurisdiction of the court in a proceeding of this kind than in an action to quiet title to land based alone on constructive service."

We think this reasoning conclusive. In the instant case, both the petition and the published notice set forth

the purposes of the action with particularity, definitely described and identified the property sought to be appropriated, referred to the will of Samuel Maxwell and its probate, and that it directed the property devised thereby and described in the petition to be sold upon the death of the widow and the proceeds to be divided equally among the nine children, of whom the defendant husband was one. We think this sufficient to bring the undivided one-ninth interest of the defendant husband within the jurisdiction of the court. Other cases on the subject are: *Twing v. O'Meara,* 59 Ia. 326; *Blackinton v. Blackinton,* 141 Mass. 432; *Longbotham v. Longbotham,* 119 Minn. 139; *Thurston v. Thurston,* 58 Minn. 279; *Sanford v. Sanford,* 5 Day (Conn.) 353.

At the time of the trial in the lower court the defendant husband had been absent and unheard of for about eight years, and from this fact appellant argues that the presumption of death must be indulged, which, of course, would bar the suit. In considering this proposition, it is necessary to refer to the evidence. The evidence shows that, when this husband left his wife and children on April 9, 1911, there were local pressing bills against him for the necessaries of life; that plaintiff had told him that, if he could not make a living for the family, she could, but would not make a living for him also; that she was on the point of writing appellant about the situation; that he had been working for Marshall Brothers, of Arlington, in the nursery business, and told plaintiff that he had $500 coming to him from them, when, in fact, he was indebted to them to the extent of $431, which appellant afterward paid and charged against his distributive share of the estate; that he had been careless in his personal habits; that he left stealthily, leaving his team at Niobrara. After he left plaintiff secured a clerkship in a store and, ever since, has continuously worked for wages, and from her earnings, not only paid up the local bills, but supported herself and children and educated them. Under these circumstances we think that

Maxwell v. Maxwell.

there are reasons other than death to account for his continued absence and silence. It is quite possible that appellant cannot invoke the presumption of death as against the wife, but, for the purpose of this opinion, we assume that he can. The presumption of death does not obtain in every case of a person being absent and unheard from for a period of seven years. It depends upon the circumstances. In *McLaughlin v. Sovereign Camp, W. O. W.*, 97 Neb. 71, this court said: "The best authorities, with substantial unanimity, hold that whether seven years' continued absence from one's usual place of residence will raise the presumption of death must depend largely upon the circumstances and conditions of each particular case." We hold that the circumstances and conditions of the instant case are sufficient to rebut any presumption of death that might arise from the husband's continued absence and silence, and that it does not obtain. This seems too clear to require the citation of authorities, but they will be found in L. R. A. 1915B, 728, 740, *Modern Woodmen of America v. Ghromley*, 41 Okla. 532. Also, *Seeds v. Grand Lodge, A. O. U. W.*, 93 Ia. 175.

While there is no one here to challenge the sufficiency of the evidence to sustain the decree of divorce, we have nevertheless examined it and find that it is amply sufficient.

There is no error in the record, and the judgment of the district court is right, and we recommend that it be affirmed.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and this opinion is adopted by and made the opinion of the court.

AFFIRMED.