TROWBRIDGE, Respondent, v. TROWBRIDGE, Appellant.

*February 9—March 9, 1962.*

For the appellant there were briefs by *Rubin, Ruppa & Wegner* of Milwaukee, and oral argument by *Nathan Ruppa*.

For the respondent there was a brief by *Bass & Goldstein* of Milwaukee, and oral argument by *Gerald L. Bass* and *Bernard Goldstein*.

FAIRCHILD, J. 1. *Alimony freeze.* With respect to the alimony awarded, the judgment contained a provision that the monthly payment shall be constant and neither party "shall be allowed, for any reason whatsoever, to come into this court to either raise or reduce said sum of Two Hundred and Fifty ($250) Dollars per month."

Sec. 247.32, Stats., provides:

"After a judgment providing for alimony . . . the court may, from time to time, on the petition of either of the

parties and upon notice to the family court commissioner, revise and alter such judgment respecting the amount of such alimony or allowance and the payment thereof, . . . and may make any judgment respecting any of the said matters which such court might have made in the original action. But when a final division of the property shall have been made under sec. 247.26 no other provisions shall be thereafter made for the wife."

At an early date this court held that a court has no power to make a final provision for alimony, nor to divest itself of authority to revise it.[1] The court stated the policy on which the statute was framed, as follows (p. 211):

"So the measure of support of the wife and of children committed to the care of the wife, depends largely on their need, age, and other circumstances, and on the ability of the husband. These are all essentially changeable from time to time; and the support of the wife and children in the wife's care comes within the same policy of continuing authority, after divorce, to be exercised from time to time, in view of changes in the premises on which the measure of support rests."

Although it was the law for many years before 1935 that a divorce judgment could not contain both a final division of property and an award of alimony, the amendment of sec. 247.26, Stats., by ch. 379, Laws of 1935, changed that rule. Since then, a judgment may include both a final division and an award of alimony. If it provides only for a final division, it may not thereafter be modified to substitute or to add a provision for alimony. If it provides for both, the provision for alimony may be revised from time to time, but the division of the estate is fixed for all time.[2]

---

[1] *Campbell v. Campbell* (1875), 37 Wis. 206, 220. See *Lally v. Lally* (1913), 152 Wis. 56, 138 N. W. 651.

[2] *Gray v. Gray* (1942), 240 Wis. 285, 287, 3 N. W. (2d) 376; *Anderson v. Anderson* (1959), 8 Wis. (2d) 133, 138, 98 N. W. (2d) 434.

The provision of the judgment "freezing" the alimony is therefore a nullity, and the circuit court is directed to strike it out.

*2. Division of property other than trust.* Anne was awarded property having a value of $35,153, or 55 percent of the value of the assets apart from the trust.

"The division of property in a divorce case is peculiarly within the discretion of the trial court. An award of one third to the wife is a proper starting point, but this amount may be increased or decreased according to special circumstances." [3]

The determination of the trial court must prevail unless clearly characterized by mistake or error with respect to the facts upon which the court exercised its discretion.[4]

What special circumstances may the court have properly considered in awarding 55 percent of the estate now in hand to Anne?

(a) *Alimony freeze.* We have no doubt that the size of the portion awarded Anne was related to the provision freezing alimony at $250 per month, and that the circuit court would not have granted her so much if it contemplated that she might obtain an increase in alimony later on. Since the provision freezing alimony cannot be effective, it follows that the award should be reduced.

(b) *Health.* Anne apparently has a type of leukemia. Her physician indicated that she may nevertheless survive for many years, and could not say whether or not she will be able to be employed. This condition could properly be considered as reason for a larger award. The court did, however, provide that Richard must pay her medical expenses in excess of $25 per month. Furthermore, a sub-

---

[3] *Schneider v. Schneider* (1961), 15 Wis. (2d) 245, 247, 112 N. W. (2d) 584.

[4] *Barrock v. Barrock* (1950), 257 Wis. 565, 44 N. W. (2d) 527.

stantial deterioration of her health would be a circumstance to be considered if an application be made for modification of alimony.

(c) *Misconduct.* Misconduct of a spouse may be given weight by the trial court in making a division of property, but that spouse is not to be pilloried.[5] Where loss results from deliberate misconduct, it is reasonable that the loss be made to fall more heavily on the guilty party, but we do not view the court's power to divide property as an appropriate means of punishment.[5a]

The court awarded Anne slightly less than one third of the value which may come to Richard by reason of the trust under his father's will. This fact was doubtless also considered in deciding the portion of the assets presently in hand which should be awarded to her.

We conclude that the award to Anne out of the assets other than the trust should not exceed 45 percent of their total value, and the circuit court is directed to alter the judgment accordingly.

3. *Children as beneficiaries of Richard's life insurance policies, and support provisions.* The judgment provided that the life insurance policies be kept in force until further order of the court and that the children are to be designated as beneficiaries.

Richard does not object to the requirement that he maintain the life insurance for the benefit of the children during their minority, but contends that this obligation as to each child should end when the child reaches twenty-one. The contention is correct,[6] as Anne concedes. The circuit court is directed to amend the judgment accordingly.

---

[5] *Barrock v. Barrock, supra,* footnote 4, page 570; *Manske v. Manske* (1959), 6 Wis. (2d) 605, 95 N. W. (2d) 401.

[5a] See *Yasulis v. Yasulis* (1959), 6 Wis. (2d) 249, 253, 94 N. W. (2d) 649; *Knutson v. Knutson* (1961), 15 Wis. (2d) 115, 121, 111 N. W. (2d) 905.

[6] *Morris v. Morris* (1961), 13 Wis. (2d) 92, 108 N. W. (2d) 124.

Richard also objects to the portion of the judgment which provides that he must pay $200 per month for support of the minor children until the youngest child reaches twenty-one even though the two older children reach majority. It is clear that the court has power to modify the amount at any time, and will be able to do so upon a review of the circumstances as each child reaches twenty-one.[7] This part of the judgment provides what shall be done.in the absence of such change. So construed, it need not be modified now.

4. *Division of interest in testamentary trust.* Richard's father was apparently a resident of Wisconsin when he executed his will and when he died. He left virtually all his property in trust, naming his wife and a bank in Illinois as trustees. The trust with which we are concerned consists of intangibles, and is apparently being administered by the two trustees, or at least by the bank, under the supervision of the probate court of Cook county, Illinois, where the will was admitted.

Richard's mother is entitled to the net income as long as she lives. Upon a certain contingency, which appears to have occurred, she became entitled to withdraw up to $5,000 from principal in any year and the bank is authorized to pay her out of principal such additional amounts as it may deem necessary or advisable for certain purposes. Richard, having reached forty, will, upon his mother's death if he be alive, become immediately entitled to payment of the entire principal and all undistributed income, and the trust will terminate. If Richard be dead, the trust is to continue for the benefit of his issue.

The will contains restrictions commonly referred to as "spendthrift" as follows:

"No money or property payable or distributable by said trustees under the provisions of this my will, shall be pledged, assigned, transferred, sold, or in any manner what-

---

[7] Secs. 247.25 and 247.32, Stats.

soever anticipated, charged, or incumbered by any of the beneficiaries hereunder, or be in any manner liable in the possession of said trustees for the debts, contracts, or engagements of such beneficiaries, voluntary or involuntary, or for any claims, legal or equitable, against any beneficiary, including claims for alimony or for the support of any spouse."

The divorce judgment provides:

". . . thirty (30%) percent of whatever interest in said trust accrues to the benefit of the defendant herein shall be and hereby is awarded, transferred, assigned, and delivered to the plaintiff, Anne Louise Frazier Trowbridge, and the balance of seventy (70%) percent thereof shall be and hereby is awarded to the defendant, Richard Trowbridge, and each of said parties shall be and hereby is divested of all right, title, and interest in and to the interest of the other party as above determined."

We have no doubt that a future interest of the type given to Richard by his father's will is part of his "estate, both real and personal" for the purpose of sec. 247.26, Stats. Thus the circuit court was authorized to provide for its division between the parties if the interest is capable of division or to take it into consideration in dividing the other assets.

We have held with respect to a husband's interest in a retirement fund that although the nature of the asset prevented awarding the wife a part of it, the value should be taken into account in dividing the other assets.[8] The supreme court of Nebraska has held that a husband's remainder after a life estate was his personal estate and could be awarded to the wife under the Nebraska statute.[9] This court has held that where a husband had future interests in two trusts, similar in material respects to the future interest Richard

[8] *Schafer v. Schafer* (1958), 3 Wis. (2d) 166, 170, 87 N. W. (2d) 803; *Schneider v. Schneider* (1961), 15 Wis. (2d) 245, 248, 112 N. W. (2d) 584.

[9] *Maxwell v. Maxwell* (1921), 106 Neb. 689, 184 N. W. 227.

has, the circuit court could properly reserve the question of division of property until the time for distribution of the corpus of the trusts.[9a]

It is difficult to fix the value of Richard's future interest. If he were to die before his mother, his interest would vanish. The longer his mother lives, the more she will be privileged to withdraw from principal. The trust fund may be exhausted as a result. The circuit court has met this problem of uncertainty, however, by providing for a division by percentage of whatever may accrue to Richard.

The contention of Richard's counsel is that the spendthrift restraints set forth in the will prevented the circuit court from ordering a division of Richard's interest in the trust. He contends that the law of Illinois governs, and points to Illinois decisions holding that spendthrift restraints are valid in Illinois.[10]

Although testator was apparently domiciled in Wisconsin, his appointment of an Illinois bank as trustee, indicates his intent that the trust be administered in Illinois. There is authority that in such circumstances a testamentary trust of movables is to be administered according to the law of the state where it is to be administered,[11] the administration is to be supervised by the courts of that state,[12] and the assignability of a beneficiary's interest is to be determined by the law of that state.[13]

Although in *Dillon v. Dillon* [13a] this court approved a divorce judgment which ordered the husband to assign the funds due him from a trust created and administered in Pennsylvania, and containing certain spendthrift restraints against assignment, this court relied upon decisions of the

[9a] *Dillon v. Dillon* (1943), 244 Wis. 122, 11 N. W. (2d) 628.
[10] See Annos. 119 A. L. R. 19, and 34 A. L. R. (2d) 1335.
[11] Restatement, Conflict of Laws, p. 380, sec. 298, comment *c*.
[12] Ibid., p. 381, sec. 299.
[13] Ibid., p. 379, sec. 297, comment *b*.
[13a] *Supra*, footnote 9a.

supreme court of Pennsylvania establishing that the interest of a husband as beneficiary of a trust can be reached in satisfaction of an enforceable claim for alimony notwithstanding spendthrift restraints which were substantially the same.

As previously indicated,[14] spendthrift restraints have been held valid, generally, in Illinois. We have found no decision in Illinois on whether a spendthrift restraint specifically prohibiting liability of the trust assets for alimony would be given effect against a transfer by divorce decree dividing the estate of the husband. We have found two decisions of intermediate appellate courts permitting enforcement of claims for alimony, but on the basis that the testator did not intend to bar claims of that type.[15] Although the rule of the Restatement is that if a beneficiary is entitled to have the principal conveyed to him at a future time, a restraint on the transfer of his interest in the principal is valid generally,[16] it also provides that such interest of the beneficiary can be reached in satisfaction of an enforceable claim by his wife for alimony.[17] It is suggested in a comment that where a claim for alimony is involved, it is discretionary with the court having jurisdiction over the administration of the trust as to how much should be applied for support of dependents.

Although the will provides that the trust funds shall not be liable in the possession of the trustee for any claim for alimony or for the support of any spouse, these terms are not specifically applicable to a divorce decree dividing property. Determination that the language is so applicable will require construction. As between a Wisconsin circuit court with the divorce action before it and a Wisconsin county court with

[14] *Supra,* footnote 10.

[15] *England v. England* (1922), 223 Ill. App. 549; *Tuttle v. Gunderson* (1929), 254 Ill. App. 552.

[16] Restatement, 1 Trusts (2d), p. 318, sec. 153 (1).

[17] Ibid., p. 328, sec. 157 (a).

jurisdiction over a testamentary trust, this court has held that the circuit court should not construe the will in order to determine whether the divorced wife could reach the assets of the trust in payment of alimony.[18]

The trustees are not parties to the divorce action. Moreover the corporate trustee is in Illinois and it apparently has possession of the securities which evidence the trust assets. The judgment purports to make a present transfer of an interest in the trust res.

It is established that a divorce decree cannot operate to change title to real estate beyond the territorial limits of the jurisdiction of the court, although it may compel a party over whom it has jurisdiction to execute a conveyance of land outside the state.[19] Whether or not the same principle would always be true with respect to a trust of personalty administered in another state, a court should certainly not attempt to transfer by decree a beneficiary's interest in a trust located in another state where the efficacy of such transfer under the laws of the other state is subject to as much doubt as in the present case.

Because of the considerations discussed above, we deem it inappropriate for the circuit court or this court to attempt to decide that under the public policy and law of Illinois there can be an effective involuntary transfer of a portion of Richard's future interest by the divorce judgment. If the judgment continues in its present form, it implies that such decision has been made. We conclude that the judgment could properly order Richard to transfer to Anne or her heirs, legatees, or assigns, 30 percent of any funds received by him from the trust and could contain other provisions to make that one effective, such as retaining jurisdiction for the purpose of enforcement, enjoining Richard from attempt-

---

[18] *Razall v. Razall* (1943), 243 Wis. 15, 9 N. W. (2d) 72.

[19] 2 Nelson, Divorce and Annulment (2d ed., 1961 rev.), p. 167, sec. 14.124.

ing to transfer or surrender his interest, or otherwise act to prejudice her rights, and imposing a lien upon the assets now assigned to Richard as security for the transfer of 30 percent of the trust proceeds. The circuit court is directed to make provision in the judgment requiring such transfer of funds received and such auxiliary provisions as it shall deem appropriate.

5. *Motions to strike briefs.* Counsel for Richard (appellant) served a reply brief pointing out instances in respondent Anne's brief where her counsel stated facts not disclosed by the record and requesting that her brief be stricken. It is quite true that in several instances, too many to be overlooked, facts outside the record were improperly set forth.

Anne's counsel countered by a motion to strike the reply brief on the ground that it was derogatory to their professional ability and integrity. The complaints in the reply brief were, however, generally well founded.

Richard's counsel, on the other hand, did not fully comply with our rules in his main brief and appendix. Many of the facts which we were called upon to consider were set forth in the findings of the circuit court, but the material findings were not printed in the appendix as required by Supreme Court Rule 6 (5) (b), sec. 251.26, Stats. The statement of facts was almost completely devoid of references to pages of the appendix or record, although some of the values stated differed from the values found by the court.

Where the trial court has made findings specifically determining the material facts, our work can be much more readily performed if we can accept the findings as verities except where the briefs disclose that the findings are attacked.

The motions to strike briefs are denied. Were the violations of the rules all committed by counsel for the losing party, we would impose extra costs against her. Under the

circumstances, however, we deem it unnecessary to do so. Richard is the prevailing party and may recover costs accordingly.

*By the Court.*—In so far as the judgment is inconsistent with the opinion on file herein, it is reversed, and cause remanded with directions to enter judgment not inconsistent with said opinion.